UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Liberty Counsel, Inc.,

      Plaintiff,

   v.

Ohio Liberty Council Corp.,

      Defendant.

No.:  2:11-cv-789

District Judge James L. Graham

Magistrate Judge Elizabeth P. Deavers

<u>Opinion and Order</u>

This matter is before the court on the motion of plaintiff Liberty Counsel, Inc. for an award of attorney's fees and non-taxable costs.  After plaintiff brought suit against defendant Ohio Liberty Council for trademark infringement, the parties entered into a court-approved consent decree under which defendant agreed to change its name to Ohio Liberty Coalition.  Plaintiff now seeks an award of attorney's fees and costs incurred in connection with bringing this suit.

**I.     Background**

Plaintiff is a policy, education, and litigation organization based in Florida.  It has been in continuous existence since 1989 and obtained a registered federal trademark for the name "Liberty Counsel" in 1999.  According to the complaint, plaintiff engages in public policy activities throughout the United States.  Plaintiff describes its political positions as conservative.  Plaintiff educates the public and promotes its policy objectives by sponsoring and participating in conferences and other public events, organizing grassroots efforts, distributing written content through print and electronic media, producing radio and online programs, appearing on televised news programs, and representing clients in legal actions.

Defendant was established in Ohio in 2009 to coordinate political "Tea Party" groups in Ohio.  According to the complaint, defendant's use of the "Ohio Liberty Council" name is

confusingly similar to plaintiff's use of its trademark because both groups are policy organizations who have overlapping positions on certain political issues.

In September 2009 plaintiff sent a cease-and-desist letter to Chris Littleton, the co-founder of defendant, notifying him of plaintiff's belief that defendant was infringing on plaintiff's mark. See Pl.'s Mot. for Att'y Fees, Ex. 1 at p. 1. Mr. Littleton responded to the letter by stating that he had not been aware of the existence of the plaintiff and that he believed defendant's name was not likely to cause confusion because defendant and plaintiff had different goals, different organizational structures, and served different groups of people. See Def.'s Opp'n, Ex. C. Mr. Littleton added that he "was happy to open a reasonable dialogue" about the matter and was willing to take steps to address plaintiff's concerns. Id.

Plaintiff sent a second cease-and-desist letter to Mr. Littleton in March 2010. See Pl.'s Mot. for Att'y Fees, Ex. 1 at p. 3. The letter reiterated plaintiff's belief that defendant's use of the name Liberty Council was infringing and stated disagreement over whether there were such differences between the parties' goals and structure as to eliminate confusion. Plaintiff characterized Mr. Littleton's letter as showing that defendant was not willing to cease using that name. Plaintiff stated that it would take legal recourse unless defendant stopped using the Ohio Liberty Council name and delivered to plaintiff for destruction all materials bearing the Ohio Liberty Council name.

There is no evidence of record that defendant responded to the second cease-and-desist letter. In June 2010, a representative of plaintiff sent an email to Mr. Littleton and other individuals associated with the defendant. See Pl.'s Mot. for Att'y Fees, Ex. 1 at p. 5. The email warned that plaintiff would pursue legal action if defendant did not comply with the March 2010 letter. There is no evidence that defendant responded to the email.

Plaintiff filed this suit in August 2011, asserting claims for infringement under the Lanham Act, for common law trademark infringement, and for violations of Ohio's Deceptive Trade

2

Practices Act.  The complaint alleges that plaintiff has a right to the Liberty Counsel name, that plaintiff and defendant have overlapping activities, missions, participants, and target audiences, and that defendant's name is substantially likely to cause confusion among the consumers of plaintiff's goods and services.

In November 2011, counsel for defendant communicated to plaintiff's counsel that defendant was willing to change its name.  See Decl. of F. Michael Speed, ¶ 3.  Counsel for plaintiff responded that it would not accept a name change as a resolution of the lawsuit unless defendant also paid plaintiff's legal fees, which were estimated to be $17,400.  Id., Ex. 1.  Counsel for plaintiff inquired as to whether defendant had an insurance policy against which it could make a claim to cover the cost of plaintiff's fees.  Counsel for defendant responded by stating that it was willing to change its name but would not pay plaintiff's attorney's fees.  Counsel for plaintiff replied that "any settlement would have to include reimbursement for [plaintiff's] fees and costs" and that plaintiff would be "continuing to work on the Preliminary Injunction, and continuing to incur fees and expenses."  Id., Ex. 2.

Plaintiff filed a motion for a preliminary injunction in March 2012.  Following several telephonic conferences with the court, the parties submitted a joint agreed consent decree, which the court approved on April 19, 2012.  In the consent decree, defendant agreed to change its name and to discontinue use of certain Internet domain names.  Under the consent decree, plaintiff was declared a "prevailing party" for purposes of any attorney's fees and costs it might later seek.

In June 2012, plaintiff moved for an order to hold defendant in contempt of court for violating the consent decree.  Plaintiff alleged that defendant's new website contained materials upon which the Ohio Liberty Council name appeared.  At the same time, plaintiff moved for an award of attorney's fees and costs incurred in bringing this lawsuit.  Defendant opposed both motions.  On

March 4, 2013, the parties reached a mutual resolution of the alleged contempt issue and plaintiff withdrew its motion for contempt.

Still pending is plaintiff's motion for attorney's fees and costs. Plaintiff's motion seeks an award of $58,786 for fees and non-taxable costs incurred in this action. Plaintiff represents that this amount reflects a voluntary reduction of 31% of the actual fees and costs it has incurred.

## II. Discussion

### A. Attorney's Fees

Plaintiff seeks an award of attorney's fees under Section 35(a) of the Lanham Act, which provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). It is agreed that plaintiff is a prevailing party for purposes of a fee award. Thus, whether an award is warranted depends on whether this case is an exceptional one.

The statute does not define "exceptional." The Sixth Circuit has held that a case is exceptional where the infringement was "malicious, fraudulent, willful, or deliberate." Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006); Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th Cir. 2004). The trial court has "considerable discretion" in deciding whether to award attorney's fees under § 1117. Sovereign Order of Saint John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1244 (6th Cir. 1997). Doubt over whether the defendant acted with the requisite intent should be resolved in favor of a finding that the case is not exceptional. See Hindu Incense v. Meadows, 692 F.2d 1048, 1052 (6th Cir. 1982) (citing O'Brien Int'l, Inc. v. Mitch, 209 USPQ 212, 221 (N.D. Cal. 1980)); see also Schlotzsky's, Ltd. v. Sterling Purchasing and Nat'l Distrib. Co., 520 F.3d 393, 402 (5th Cir. 2008) ("The prevailing party has the burden to demonstrate the exceptional nature of the case by clear and convincing evidence.").

Factors a court may consider in deciding if a case is exceptional include: whether the infringing party attempted to ascertain if his use of the name or mark would infringe on the rights of

4

another; whether the infringing party was given notice of his wrongdoing; whether the infringing party acted in reasonable reliance on the advice of legal counsel; whether the infringing party acted with bad faith, oppression, or coercion; and whether the prevailing party suffered any damages or lost sales. See Audi, 469 F.3d at 551; Eagles, 356 F.3d at 728; Hindu Incense, 692 F.2d at 1051; Timber Prods. Inspection, Inc. v. Coastal Container Corp., 827 F.Supp.2d 819, 831 (W.D. Mich. 2011).

Plaintiff's primary argument is that defendant's conduct was willful and deliberate because Mr. Littleton received the cease-and-desist letters, yet defendant continued its use of the name Ohio Liberty Council. The court is unwilling to characterize the case as exceptional on this basis alone. See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest. 771 F.2d 521, 526 (D.C. Cir. 1985) (fee award under § 1117 reserved for "uncommon, not run-of-the-mill" cases).

Mr. Littleton's response to the first letter communicated that defendant, when it chose its name, was not aware of the existence of the plaintiff. The president of defendant has also submitted a sworn declaration to that effect. See Decl. of Tom Zawistowski, ¶ 8. Further, when defendant was formed, it retained outside legal counsel to search for trademarks that could be similar to Ohio Liberty Council, and Mr. Zawistowski was informed that none existed. Id. ¶ 7. The court is not in a position to determine the extent or scope of the trademark search performed by defendant's legal counsel. Nonetheless, there is no evidence to dispute that defendant, when it was formed, had an innocent or good faith belief that it could lawfully use the name Ohio Liberty Council. See Aero-Motive Co. v. U.S. Aeromotive, Inc., 922 F.Supp. 29, 48 (W.D. Mich. 1996) (denying request for attorney's fees where infringing party proceeded in "reasonable reliance on the advice of counsel"). Supporting this finding of a lack of deliberate infringement and lack of malice is the fact that when defendant was searching for Ohio Liberty Council as an available business name and internet domain name, it found that no other parties had claimed the name for those uses. Id., ¶ 13;

compare with ForeWord Magazine, Inc. v. OverDrive, Inc., No. 1:10-cv-1144, 2013 WL 140195, at **5-6 (W.D. Mich. Jan. 10, 2013) (awarding attorney's fees where defendant intentionally obtained domain name to misdirect traffic from plaintiff's website).

The court further finds that defendant, after being notified of plaintiff's existence and its claim to the Liberty Counsel name, did not act willfully or deliberately to infringe plaintiff's name. See Moore Bus. Forms, Inc. v. Ryu, 960 F.2d 486, 493 (5th Cir. 1992) ("[A]ll post-notification conduct must be analyzed to determine if the defendant's continuing actions were unreasonable and amounted to bad faith."). Plaintiff portrayed itself in the first cease-and-desist letter as a litigation and education organization committed to advancing certain goals embodied in plaintiff's "Declaration of American Values." Defendant believed that it could distinguish the use of its name on the grounds that it was not a litigation organization, that it did not promote or support certain of plaintiff's values, and that the parties served different constituents. Defendant offered to take steps to address plaintiff's concerns and invited an open dialogue between the organizations.

Defendant's invitation was met with silence, and when plaintiff sent its second cease-and-desist letter many months letter, it accused the defendant of being unwilling to cease violating plaintiff's rights and demanded that defendant turn over all of its materials for destruction. The court finds that defendant's refusal to comply with plaintiff's demand does not establish this as an exceptional case. This is not a situation where the defendant produced infringing goods that were obvious copies or counterfeits intended to bring profit to defendant at plaintiff's expense. Rather, defendant's materials were its own political advocacy that bore a name it perceived to communicate an affiliation with Ohio Tea Party groups. Cf. Sovereign Order, 119 F.3d at 1244 (case not exceptional where defendant used a mark for "perceived historical and religious reasons"). Though defendant depends upon donations, see Zawistowski Decl., ¶ 4, plaintiff has not demonstrated that it lost any of its own donations as a result of defendant's use of the Ohio Liberty Council name. See

Hindu Incense, 692 F.2d at 1051 (holding that district court properly denied award of attorney's fees where the plaintiff had not lost any sales due to the infringement); Chain v. Tropodyne Corp., No. 99-6268, 2000 WL 1888719, at *7 (6th Cir. Dec. 20, 2000) (holding that district court properly denied award of attorney's fees where the plaintiff "failed to prove that it suffered any damages whatsoever").

Plaintiff also argues that defendant's conduct after this suit was filed demonstrates that defendant's infringement was willful and deliberate. Again the court is not persuaded that this characterization is correct. Defendant readily offered to change its name and the only issue that kept defendant's offer from resolving the litigation was plaintiff's undisguised interest in recovering its legal fees. And while plaintiff argues that defendant's willfulness is exhibited by its alleged violation of the consent decree, plaintiff's motion to that effect has been withdrawn and, in any event, the defendant established that the much of the online materials at issue in the contempt motion were archived articles and posts (some authored by third parties) that predated the entry of the consent decree.

Accordingly, the court finds that this is not an "exceptional case" for which an award of attorney's fees is appropriate.

**B.     Costs**

Plaintiff seeks an award of $4,441 in non-taxable costs, which are costs beyond the $570 in costs taxed by the clerk of court on May 24, 2012. See 28 U.S.C. § 1920. These non-taxable costs include $2753 in online legal research expenses, $973 in travel expenses to a court-ordered mediation, and $700 in legal expenses for outside counsel to draft a cease-and-desist letter.

Section 1117 provides that costs are recoverable by the prevailing party "subject to the principles of equity." 15 U.S.C. § 1117(a). The decision of whether to award non-taxable costs is committed to the trial court's discretion. Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376

7

F.3d 615, 625-26 (6th Cir. 2004). Though an award of non-taxable costs is not necessarily subject to the "exceptional case" standard required for an award of attorney's fees, courts that have found that an award of attorney's fees is unwarranted have often likewise rejected a request for non-taxable costs. See, e.g., Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 820 F.Supp.2d 569, 576 (S.D.N.Y. 2011); Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc., 12 F.Supp.2d 499, 501 (D. Md. 1998).

The court denies plaintiff's request for non-taxable costs. Plaintiff has already been granted its taxable costs to which it was entitled as a prevailing party. Defendant has represented that it has extremely limited financial resources. See Zawistowski Decl., ¶ 6 (stating that defendant has no assets other than $3200 in cash). Finally, the parties' resolution of the contempt issue includes a financial obligation that the defendant must meet over the next 10 months. See Doc. 50. Equity would not be accomplished by requiring defendant to bear plaintiff's non-taxable costs.

### III. Conclusion

Plaintiff's motion for an award of attorney's fees and non-taxable costs (doc. 32) is thus DENIED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: March 28, 2013